Rebecca **MITSON, By and Through her next friend, Marilyn JONES, individually, and on behalf of all others similarly situated, et al., Plaintiffs,**

v.

Gregory L. **COLER, in his official capacity as Secretary of the Department of Health and Rehabilitative Services, and V. Sheffield Kenyon, in his official capacity as Program Staff Director of Economic Services, Department of Health and Rehabilitative Services, Defendants.**

Gregory L. **COLER, etc., Third Party Plaintiff,**

v.

Otis R. **BOWEN, as Secretary of the United States Department of Health and Human Services, Third Party Defendant.**

No. 87–12020–Civ.

United States District Court, S.D. Florida.

Dec. 1, 1987.

Christine E. Larson and Helen M.E. Stevens, Florida Rural Legal Services, Inc., Ft. Myers, Fla., Barbara J. Prager, Legal Aid Service of Broward County, Inc., Ft. Lauderdale, Fla., for plaintiffs.

Robert A. Butterworth, Atty. Gen., and James A. Peters, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., Ted Mack, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, Fla., for defendants and for third party plaintiff.

Leon B. Kellner, U.S. Atty., and Wendy Jacobus, Asst. U.S. Atty., Miami, Fla., Bruce R. Granger, Chief Counsel, Region IV, and Gary A. Ratner, Asst. Regional Counsel, Dept. of Health and Human Services, Atlanta, Ga., for third party defendant.

## MEMORANDUM OPINION AND FINAL ORDER

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon a final evidentiary hearing which was combined with a hearing on motions for summary judgment filed by the plaintiff class and by the third party plaintiff. The Court has carefully considered the entire record and hereby enters its opinion.

*Jurisdiction*

The Court's jurisdiction over this matter is predicated upon 42 U.S.C. Section 1983 and 28 U.S.C. Section 1331.

*The Nature and History of the Action*

The Florida ICP Program is a wholly state-administered program designed to provide payment for medical care and services rendered to persons who would otherwise be unable to obtain such care and services because of their income. The ICP Program provides payment to nursing homes on behalf of individuals who are found to be aged, blind, or disabled. The program is jointly funded by state general revenue (43.83%) and federal matching funds (56.16%). In order to be eligible for matching funds, a state must follow policy established by the Health Care Finance Administration (HCFA) which governs the Medicaid and Medicare programs (42 C.F.R.) and the Social Security Administration which governs the Federal Supplemental Security Income Administration Program (SSI) (20 C.F.R.), including SSI's definition of income. Florida's Medicaid program is not otherwise controlled or regulated by the federal government except to the extent that the state receives federal funds.

This action was commenced as a class action on May 20, 1987. The plaintiff class members are elderly veterans or spouses of veterans, residing in nursing homes in Florida, who seek to enjoin the Florida Department of Health and Rehabilitative Services (HRS) from including as "countable income," in determining their eligibility for Medicaid Institutional Care Payments (ICP) Program benefits, that portion of their Veterans Administration Improved Pensions (VAIP) which is awarded pursuant to 38 U.S.C. Section 503(a)(8) for unreimbursed medical expenses; and to have HRS reinstate their ICP benefits and refrain from terminating ICP benefits on the aforementioned basis.

On September 14, 1987, this Court certified the plaintiff class, consisting of all persons who have been, or will be, denied ICP benefits by virtue of the state defendants' inclusion of the portion of VAIP attributable to unreimbursed medical expenses (UME) in countable income. Following the class certification, plaintiffs moved for preliminary relief against HRS.

It is the State defendant's position that it is bound by applicable law and United States Department of Health and Human Services (HHS) regulations to include the disputed portion of VAIP in countable income. The state Defendant filed a third party complaint against the United States Secretary for Health and Human Services for declaratory and injunctive relief to determine, inter alia, whether HHS could penalize HRS if HRS were to determine income differently than HHS policy permits. The substance of the third party complaint was not considered by the Court in determining preliminary relief, the plaintiff class having moved against the state defendant, HRS, only. However, the U.S. Secretary of HHS was invited to, and did, participate fully at the hearing on plaintiffs' motion for preliminary injunction, and submitted various memoranda of law in conjunction therewith, and was heard at oral argument, since construction of HHS regulations was at issue.

On October 5, 1987, a preliminary injunction was entered by this Court. *Mitson v. Coler*, 670 F.Supp. 1568 (S.D.Fla.1987). On the basis of numerous pleadings and oral arguments, and the excellent analysis of the issues by counsel for all parties, the Court determined that there was a substantial likelihood plaintiffs would prevail on the merits, and that plaintiffs had met all other burdens necessary to show the propriety of preliminary relief. *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983).

A final evidentiary hearing on the merits was held on November 16, 1987. None of the parties called any witnesses, and only a single piece of evidence was offered.[1]

---

1. The third party defendant offered into evidence a pamphlet entitled "Federal Benefits for Veterans and Dependents," for the purpose of establishing that the UME provision was not intended as a reimbursement of medical expenses. Although the Court considers the pamphlet minimally relevant, and hence admits it into evidence over plaintiffs' objection, the

However, the Court did hear oral argument on the merits and upon pending motions for summary judgment filed by the plaintiff class and the third party plaintiff. The pleadings filed in support of those motions, as well as the arguments of counsel in open court, reveal that there is no dispute among the parties as to any fact material to the resolution of this matter.

Furthermore, the legal arguments set forth in connection with the summary judgments under consideration are identical to those considered by the Court in granting preliminary relief. After careful and additional consideration of these arguments, the Court is convinced that the plaintiff class is entitled to a permanent injunction as a matter of law.

In the opinion which accompanied this Court's Order entering the preliminary injunction, the Court explained in detail its view of the interplay of the statutory and regulatory schemes at issue, and legal basis for granting relief to the plaintiff class. The Court now ratifies, approves, and adopts the preliminary injunction and the accompanying opinion, as supplemented hereby.

### The Preliminary Injunction

The central issue considered in the preliminary injunction opinion was the proper interpretation of certain HHS regulations defining income for the purpose of Supplemental Security Income eligibility, 20 C.F.R. Sections 416.1102 and 416.1103. This point is critical because the state defendant is obligated to comply with HHS regulations governing SSI eligibility in awarding Medicaid benefits, in order to ensure qualification for federal matching funds. 42 C.F.R. Section 435.722(b). 20 C.F.R. Section 416.1102 includes in income anything received in cash or in kind which is available to meet basic needs, i.e., for food, clothing, or shelter.[2] Section 416.1103 excludes from income certain amounts not available to meet basic needs, and in partic-

ular excludes "[a]ssistance provided in cash or in kind ... under a Federal, State, or local government program, whose purpose is to provide medical care or services...." 20 C.F.R. Section 416.1103(a)(3).

The Court affirms its initial conclusion that amounts received by the plaintiffs and the class they represent as VAIP, and which are attributable to the exclusion under 38 U.S.C. Section 503(a)(8) of unreimbursed medical expenses, constitute reimbursements for using their non-VA income to pay medical expenses. Furthermore, the Court remains convinced that these medical reimbursements should not be counted as income for purposes of determining Medicaid eligibility, since they do not constitute "income" within the meaning of 20 C.F.R. Section 416.1102, or are excludable from "income" pursuant to 20 C.F.R. Section 416.1103(a)(3).

In the preliminary injunction opinion, the Court observed that the VAIP program is a "one-variable" benefit. In computing a VAIP benefit, an applicant's income from all other sources is subtracted from the applicable guaranteed benefit level, and the resulting difference, if any, is the amount of the VAIP award. The exclusion from non-VA income of unreimbursed medical expenses represents an important legislative exception for pass-through type receipts which are not realistically available to meet basic needs.

The Court further observed that the VAIP benefits received by each member of the plaintiff class are indeed pass-through receipts. In each case, there is a but-for relationship between the incurment of substantial medical expenses and the payment of the additional VAIP amounts. In no case does the increase in VAIP result in additional resources being available to meet basic needs, since the recipient's non-VA income has *already* been reduced by the medical expenses incurred.

Court finds nothing about the pamphlet or its description of Veterans Administration programs to be particularly persuasive.

2. 20 C.F.R. Section 416.1102 provides:

Income is anything you receive in cash or in kind that you can use to meet your basic needs for food, clothing, or shelter. In-kind income is not cash, but is actually food, clothing, or shelter, or something you can use to get one of these.

 Thus the Court, based on its own interpretation of 38 U.S.C. Section 503(a)(8), and on the reasoning of *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir.1982), and *Peffers v. Bowman,* 599 F.Supp. 353 (D. Idaho 1984), concluded that the additional VAIP amounts received by members of the plaintiff class constitute a reimbursement of medical expenses, and not a mere adjustment to non-VA income, as contended by the Secretary. The Secretary continues to argue that the Court should defer to the interpretation given a statute or regulation by the agency charged with administering it. However, as noted previously by this Court, the Secretary's construction of the HHS income regulations in this case turns almost completely on the interpretation of Veterans Administration statutes and regulations. To the extent that it does so depend, it is not entitled to special deference. *Tsosie v. Califano,* 651 F.2d 719 (10th Cir.1981). The Court remains convinced of the correctness of its initial conclusions.[3]

 Throughout this litigation, the Secretary has taken the position that a VAIP payment received pursuant to the UME provision is a mere adjustment to non-VA income. While the UME provision is arguably an income adjustment provision, the Court does not find meaningful the distinction between a reimbursement of medical expenses and an adjustment to income *in respect of medical expenses.* The Secretary's argument in this case is one of mere semantics.

In addition, the Court rejects the contention that by excluding VAIP payments from countable income, the Court is forcing the state to adopt a "spend-down" program for a limited class of individuals.[4] Spend-down programs are entirely optional under Medicaid legislation, and it is within the power of each state to determine when and under what circumstances such a program will be adopted. However, it does not follow that Florida may wrongfully include in countable income medical reimbursements received under an independent federal program. Because the characterization of the plaintiffs' VAIP is accomplished under the UME provision and the implementing regulations, 38 C.F.R. Section 272, there is no additional income to be "spent down" at the time the Florida ICP program comes into play.

Not only is plaintiffs' characterization of the additional VAIP payments consistent with Florida's choice not to adopt a spend-down program, but it is also consistent with the intent of the Secretary in promulgating 20 C.F.R. Section 416.1103(a)(3) and

---

3. The Court also affirms its previous determination that the actions of HRS are properly characterized as "under color of state law" so as to state a claim under 42 U.S.C. Section 1983. Florida's ICP Program is entirely state-administered and is, in the first instance, state-funded. The only federal involvement in the state Medicaid program is triggered by the state's request to receive matching funds. Under the circumstances, the state cannot be characterized as a purely passive actor, so as to come within the holding of *Rosas v. Brock,* 826 F.2d 1004 (11th Cir.1987).

4. "Spend-down" programs seek to ensure equitable treatment of persons with income levels higher than those established for Medicaid eligibility as of right, but who may realistically be as indigent as qualifying individuals because of the medical expenses they incur.

The Medicaid program permits states to establish benefit programs for individuals in two broad classes, those who are "categorically needy" and those who are "medically needy." *See* definitions at 42 C.F.R. Section 435.4. Categorically needy persons are those persons who fall within eligibility categories for which Medicaid is made available, including the relevant income restrictions. Medically needy persons are those persons, otherwise within the descriptive scope of the Medicaid program, whose "excess" income excludes them from being categorically needy, but who incur medical expenses equal to the difference between their actual incomes and the income standards applicable to certain Medicaid categories.

In general, if a state participates in Medicaid, it is required to provide benefits to persons who are categorically needy. 42 U.S.C. Section 1396a(a)(10). In addition, a state may adopt a spend-down program to allow persons who are medically needy, but who are not categorically needy, to qualify for benefits under the Medicaid program. *Id.;* 42 C.F.R. Section 435.-301. When a state's plan so provides, these persons may "spend down" their excess income to reach the appropriate level and become eligible. *See generally Schweiker v. Hogan,* 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982). Florida has not exercised its statutory option to adopt a spend-down program for ICP purposes.

its linear predecessor, 20 C.F.R. Section 416.1109 (1980). In his initial proposal of the income exclusion for amounts received for medical care, the Secretary stated that:

Where the SSI program reduces its payments to take into account assistance of this type (medical or social) furnished under other governmental programs, SSI is, in effect, nullifying or frustrating achievement of those other programs' purposes. Consistent with the intent underlying these medical care and services and social services programs, SSI policy is being modified so as to exclude from the definition of income [in cash or in kind compensation] ... furnished for the purpose of providing medical care and services or social services under any governmental program.

Notice of Proposed Rule Making, 43 Fed. Reg. 41055 (Sept. 14, 1978). The inclusion of plaintiffs' additional VAIP payments in income would frustrate and perhaps nullify the effect of the UME provision, and so do violence to the Secretary's regulatory intent.

The question of whether a Section 503(a)(8) reimbursement for medical expenses is income within the meaning of the SSI regulations has previously been addressed by other Courts. In *Summy v. Schweiker, supra,* the Ninth Circuit addressed this precise issue, and concluded, despite identical arguments by the Secretary, that such amounts are properly excluded from the definition of income for SSI purposes. *Peffers v. Bowman, supra,* involved the same class of plaintiffs as the case before this Court. In *Peffers,* the United States District Court for the District of Idaho determined that UME reimbursements should be excluded from income under the SSI regulations for purposes of determining Medicaid eligibility, based on *Summy.* This Court agrees with the holdings and reasoning of *Summy* and *Peffers.*

### Definition of the Plaintiff Class

In his response to the plaintiffs' motion for class certification, the Secretary requested that the class be divided into two subclasses as follows:

Subclass 1. Those persons who will be denied benefits under the Florida Medicaid Institutional Care Payments (ICP) program because, as a result of receipt of payments for unreimbursed medical expenses under the Veteran's Administration Improved Pension (VAIP) program, their monthly income exceeds 300% of the Supplemental Security Income benefit (or exceeds $1,020.00).

Subclass 2. Those persons who may be denied benefits under the Florida Medicaid Institutional Care Payments (ICP) program because, as a result of receipt of payment for unreimbursed medical expenses under the Veteran's Administration Improved Pension (VAIP) program, their monthly income exceeds the single income level set by Florida for eligibility for the ICP program (4881) but does not exceed 300% of the Supplemental Security Income benefit ($1,020.00).

This request was based on recently enacted federal legislation which would allow Florida to use methodologies differing from those of the SSI program to determine the income of individuals whose monthly income does not exceed 300% of the SSI benefit rate. Medicare and Medicaid Patient and Program Protection Act of 1987, Pub.L. No. 100–93, Section 9 (1987). Stated simply, Florida is now free to disregard VAIP payments for those individuals whose income—including VAIP payments—does not exceed $1,020.00. Thus, Subclass 1 would consist of members of the plaintiff class disqualified under all circumstances, while Subclass 2 would consist of members of the plaintiff class who will continue to be disqualified only because Florida chooses *voluntarily* to include their VAIP payments in income.

The state defendant has represented to the Court that efforts are now underway in the Florida legislature to apply Section 9 of Public Law 100–93 to individuals with income below 1,020.00. Nothing in this opinion, or in the Order hereby entered, is intended to interfere with those efforts. However, the Court feels it is untimely to create subclasses, since the state has not yet acted to exercise its statutory option.

*Third Party Complaint*

■ Throughout this lawsuit, the state defendant has taken the position that it is constrained by federal law from excluding VAIP payments from countable income. The state defendant claims that it is bound by regulations and policies promulgated by the Health Care Finance Administration (HCFA) which establish eligibility criteria for Florida's participation in the Medicaid Institutional Care Payments Program. Those regulations require the inclusion of all VAIP payments in income for the purpose of determining eligibility under the ICP program. *See* 42 C.F.R. Sections 435.-721 and 435.722. The state of Florida has agreed to follow these regulations in its "1634" agreement with the Social Security Administration. *See* 42 U.S.C. Section 1383c (1982).

Following the commencement of this lawsuit, the state defendant communicated with the HCFA concerning what actions might be taken if Florida, pursuant to court order or otherwise, were to exclude VAIP payments representing UME reimbursements from countable income. The HCFA has taken the position, consistent with extant regulations and policies, that Florida would be considered out of compliance with federal requirements, and would therefore be subject to a disallowance of, and possibly a disqualification from, federal matching funds. Letter from Richard L. Warren, Associate Regional Administrator, Division of Programs Operations, Health Care Finance Administration to Donna H. Geller, Program Administrator, Florida Department of Health and Rehabilitative Services (June 16, 1987). The state defendant, third party plaintiff, therefore asks that this Court enjoin the Secretary of Health and Human Services from taking any adverse action in response to the exclusion of VAIP payments from countable income pursuant to court order.

Notwithstanding the communication received from the HCFA by the third party plaintiff, the Court is reluctant to enjoin a federal agency when it has not yet definitively undertaken to penalize the state of Florida in connection with the activities considered in this action. However, it would be of keen interest to the Court to preserve and protect whatever rights the state may have, if and when the Secretary takes any action in contravention of those rights.

In *Peffers v. Bowman, supra,* the Court permanently enjoined the state defendant from implementing eligibility regulations for Medicaid which included UME reimbursements in income, but refused to enjoin the Secretary of HHS from requiring compliance with federal regulations as a condition precedent to federal financial assistance. 599 F.Supp. at 356. This Court finds persuasive the refusal in *Peffers* to enjoin the federal government previous to the time that the state had suffered any injury. The plaintiffs' action was brought against the state defendant only, and the Court is able to grant complete relief in the main action without exercising its equitable powers to enjoin the U.S. Secretary of Health and Human Services. The Court therefore reserves ruling on the merits of the third party complaint unless and until such time as the Secretary, through the HCFA or otherwise, takes affirmative steps to reduce federal funding or penalize the state defendant in any way because of steps taken in compliance with the Order of this Court. The Court does, however, deem it appropriate to encourage the federal agency to discuss and review this matter in depth with the state agency, with a view to resolving any persisting conflict consistent with the interpretation given to the subject regulations in the Ninth Circuit by reason of the decision rendered in *Summy v. Schweiker, supra.*

Accordingly, based on the foregoing, it is

ORDERED AND ADJUDGED as follows:

1. The state defendants are permanently enjoined from including VAIP reimbursed medical expenses as income for purposes of determining ICP eligibility.

2. The state defendants shall reinstate the named class representatives' ICP benefits.

3. The Court reserves jurisdiction over the third party action, and reserves ruling

on the merits of the third party complaint unless and until such time as the third party plaintiff is penalized by the third party defendant, in any manner, as a result of compliance with the Order hereby entered.

4. Costs shall be taxed according to a bill of costs to be submitted by plaintiffs in accordance with the Local Rules.

5. The Court reserves ruling and jurisdiction to entertain requests for award of attorney's fees. Motions for award of attorney's fees, if any, shall be filed within 15 days from the date of this Order, with a supporting memorandum of law citing appropriate authority for such award. The parties should first attempt to determine an appropriate fee, without waiving any right to fees. If the parties are unable to agree upon the amount of any attorney's fees, then the party seeking fees shall supply affidavits of the time, effort, and work involved, and an independent attorney's statement as to the reasonableness of the fees. The responding party shall have 15 days thereafter to submit counteraffidavits.